JOSEPH I. THOMPSON AND JOHN PETTY v. JOHN N. CON-
OVER.

Conover agreed to sell Cornelius Petty all the corn he had to sell, sup-
posed to be in all about 600 bushels, the white at 65 cents, and the
yellow at 63 cents per bushel. C. delivered the white, and offered to
deliver the yellow, which Petty refused to receive: *held*, that the con-
tract was an entirety, and the refusal of plaintiff to receive the yellow
was a repudiation of the contract, and that C. could recover the value
of the white in trover, and that he could do so even if, before demand
and refusal, Petty had so mixed the whole corn as that it could not
be identified. It was not error in the court charging the jury that C.
could recover, even if the corn had been ground before demand and
refusal.

Error to the Circuit Court of the county of Monmouth.

For the plaintiff in error, *J. D. Bedle.*

For the defendant, *M. Beasley.*

The opinion of the court was delivered by

VREDENBURGH, J. This was an action, brought in the
court below, by Conover against the defendants, to recover
272 bushels of white corn ; and the question was whether it
was the plaintiff's property on the 16th of March, 1861. The
facts were as follows : the plaintiff, being a farmer, and Corne-
lius Petty, a miller, met on the first of March, 1861. Con-
over asked Petty if he was buying corn. Petty replied he
was, every day, and asked if he (Conover) had some for sale.
Conover replied that he had about 600 bushels. Petty in-
quired what he asked for it. Conover replied, sixty-five cents
a bushel. Petty asked if it was white or yellow. Conover
replied, nearly half and half. Petty said he would give 65
cents for the white, but not for the yellow, and then said he
would give 62½ for the yellow. Conover replied, make it
sixty-three cents, and you shall have it. It was then agreed
between the parties that Petty should give Conover 65 cents
per bushel for the white, and sixty-three for the yellow, for
all the corn Conover had to sell, supposed to be in all about

600 bushels. Petty then asked Conover when he would like to deliver it. Conover told him about the middle of March, and said he would call again, and see when he (Petty) would have it. Conover then said, how about the payment of the money? Petty said, when would you like to have it? Conover said, on the 25th of March. Petty said, I can pay you all your money as soon as you get it delivered; all of it, just as lief do it as not. Conover replied he would like to have it so. Conover called again on Petty, about two weeks after this bargain, and asked him if he was ready for the corn, and which he would have first, the white or the yellow? He said, the white. In pursuance of which Conover did deliver the white corn, on Friday, the 15th day of March, *viz.* 272 bushels, at the mill. On Monday, the 18th March, Conover sent two loads of the yellow to the mill, *viz.* 68 bushels, which were sent back by Cornelius Petty, saying that they did not receive any more corn. On Friday, the day the white corn was delivered, Cornelius Petty had confessed judgment to his brother, John Petty, for a large amount, and the white corn delivered to Cornelius Petty on Friday was seized on Saturday under the *fi. fa.* on his brother's judgment, and seized under his orders by the sheriff, whereupon Conover brought this action against the sheriff and the plaintiff in execution to recover the value of the white corn delivered as aforesaid.

The only question raised by this case is, whether this contract was an entirety. If it was, then when Cornelius Petty refused to take the yellow corn, he himself repudiated the contract, and the white corn belonged, as before, to Conover; and as the defendants seized this white corn, or corn with which it had been so mixed by Cornelius Petty as that it could not be identified again, the defendants are responsible.

The question of entirety is one of intent of the parties to be gathered from its terms.

Was this one contract, or was it two? The defendants contend that there were two contracts, one to sell and deliver the white corn, and another the yellow. But the bargain of Conover with Petty was to sell all his corn that he had to

sell, supposed to be about 600 bushels, and to be paid for when all was delivered, and not before. What was said about the corn, as white or yellow, was only to regulate the price, and to prevent any question as to the fairness of the proportions. If they had agreed to sell all the corn, both white and yellow, and nothing further said, it would have been the interest of Conover to smuggle in as much yellow corn as possible. To prevent any such questions, they agreed that as much of the whole amount of the corn as was white, should be paid for at 65 cents, and as much of the whole amount sold as was yellow, should be paid for at the rate of 63 cents. It manifestly was not the intention of the parties, if white corn should rise, and yellow corn fall, that Mr. Petty could take the white and reject the yellow. The object of Mr. Conover was to sell his whole crop, and of Mr. Petty to buy it.

There was no error in the court instructing the jury, that whether the corn was ground up or not made no difference, for two reasons: first, because the evidence shows that if this identical corn had been ground, there was enough left in the bin with which it had been mixed to answer for the 272 bushels; and in the second place, because if not there as corn, it was as meal, and the plaintiff could amend if necessary; because if the one reason assigned by the court was not good, the other undoubtedly was.

I think the judgment below should be affirmed.

BROWN and OGDEN, Justices, concurred

Judgment affirmed.